IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>DANIEL ISAAC OSSE,<br><br>　　　　　　　Defendant. | CR 20-110-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Daniel Isaac Osse's Motion to Suppress and Dismiss, filed August 16, 2021. (Doc. 31). Plaintiff United States of America responded to the Motion on August 30, 2021. (Doc. 34). The Court held a hearing on the matter on October 1, 2021. At the hearing, counsel requested an opportunity to file supplemental briefing on the matter. The Court granted the request. Defendant filed a supplemental brief on October 18, 2021. (Doc. 39). The Government responded on November 1, 2021. (Doc. 40). The Motion is deemed fully briefed and ripe for adjudication.

Osse seeks to suppress evidence obtained during a backpack search law enforcement conducted after law enforcement recognized Osse from a pawn store interaction earlier that day. For the following reasons, the Court denies Defendant's Motion.

1

I.      RELEVANT BACKGROUND

On March 31, 2020, the Billings Police Department received a call about a suspicious individual allegedly attempting to gain access to a firearms store via a restricted back door. The caller stated that the individual arrived in a blue passenger car with a broken window that he parked in a legal, alley parking spot. The caller described the individual as a white male, approximately 30-35 years old, wearing blue jeans, a black beanie, and a black and blue jacket.

Billings Police Officer Firebaugh recognized the description of the individual as Firebaugh had been in the firearms store moments earlier and witnessed the individual go next door to a pawnshop and sell items for cash. At the time, the pawnshop conducted business outdoors due to Covid-19 concerns. Firebaugh immediately returned to the firearms store and found the vehicle matching the caller's description parked legally in the back alley. The vehicle was locked. Firebaugh ran the vehicle's license plates while another officer, Officer Puckett, arrived on scene and observed the individual outside the pawnshop. The individual saw Officer Puckett and took off running in the direction of the vehicle and Officer Firebaugh. Firebaugh saw the individual run through a nearby alley towards him. Officer Firebaugh commanded the individual to stop but he again ran away.

Firebaugh chose not to pursue. Instead, the officer visited the pawnshop to inquire about the individual's activities there. Pawnshop employees showed Firebaugh a receipt from the transaction where the individual wrote that his name was 'Joe Sullivan' and provided a social security number. Neither the name nor the social security number returned any valid matches. Meanwhile, Officer Puckett contacted the registered owner of the vehicle, Rose Cook, who stated that her sister's boyfriend, Daniel O, had borrowed her vehicle. Puckett confirmed that the man the officers witnessed was Daniel Osse. The officers discovered that Osse was on active supervision with the State of Montana and had a warrant for his arrest due to violations of the conditions of his release. Osse had previously been convicted of robbery and other property crimes.

Officer Puckett contacted Montana Probation and Parole Officer Darren Zent regarding Osse's supervision and informed Zent of the recent events. Zent requested that officers search the vehicle for violations of Osse's supervision. The vehicle's owner, Rose Cook, had arrived on scene and told officers that everything in the vehicle was hers except for a black backpack on the passenger seat. Officers searched the backpack and found a loaded .22 caliber pistol and a sock containing rings with pawnshop price tags still on them. The jewelry matched that of items stolen from another local pawnshop on March 24, 2020.

3

Osse was eventually located by other Billings Police Officers and arrested in a nearby neighborhood after another brief chase.

## II. STANDARD OF REVIEW

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

## III. DISCUSSION

In his supplemental briefing, Osse narrows his suppression arguments to two issues: (1) whether Osse abandoned the vehicle and thereby forfeited his standing to challenge the search of the vehicle; and (2) whether the probation/parole search of the vehicle was based on a reasonable suspicion that the vehicle was connected to criminal activity or contraband. The Court shall address the second issue first.

> *A. Whether Officers Firebaugh and Puckett had the Legal Authority to Search the Vehicle and Osse's Backpack at the Direction of the Probation/Parole Officer.*

Osse asserts that Officers Firebaugh and Puckett "lacked reasonable suspicion to believe the vehicle was involved in any crime or contained any evidence related to a crime." (Doc. 39 at 14). Without that reasonable suspicion connecting the vehicle to the alleged criminal activity, Osse argues there was no grounds to legally search the vehicle. (*Id.*).

4

The Government responds that ample evidence existed to demonstrate some connection between the vehicle and the suspected supervision violations including that Osse had arrived in the vehicle, Osse's suspicious activity at the back of a firearms store and Osse's flight from officers, and law enforcement's subsequent discovery that Osse had pawned jewelry under fake personal identifiers. (Doc. 40 at 6). This evidence led law enforcement to reasonably believe that further evidence of supervision violations could be discovered in the vehicle, according to the Government. (*Id.*).

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for promotion of legitimate governmental interests.'" *U.S. v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). However, probationers face a diminished right to privacy as an inherent punishment of their status. *Id.*, 534 U.S. at 119. "Because a state's operation of its probation system presents 'special needs' beyond normal law

enforcement which render impracticable the Fourth Amendment's usual warrant and probable cause requirements, probation searches conducted pursuant to state law satisfy the Fourth Amendment's reasonableness requirement. *U.S. v. Watts*, 67 F.3d 790, 793 (9th Cir. 1995) (internal citations omitted) *rev'd on other grounds*, 519 U.S. 148 (1997).

In Montana, "a probation officer may search a probationer's person, vehicle, and residence and the probationer 'must submit to such search,' upon the probation officers 'reasonable [cause] that the offender has violated the conditions of supervision.'" *State v. Conley*, 415 P.3d 473, 476 (Mont. 2018) (quoting Admin. R. M. 20.7.1101(7)). A law enforcement officer may conduct a probation search on behalf of probation officers if the search is otherwise lawful. *State v. Fritz*, 142 P.3d 806, 809 (Mont. 2006). Reasonable cause "requires substantially less than the probable cause standard under the Fourth Amendment [and] . . . [whether] reasonable grounds exist to conduct a probationary search is a factual inquiry which should be determined based on the totality of the circumstances." *State v. Stucker*, 973 P.2d 835, 841 (1999).

Here, the Court finds that Officers Firebaugh and Puckett had reasonable cause to search the vehicle and Osse's backpack. Firebaugh responded to a call about suspicious activity in the area. Firebaugh recognized the suspect's description from the phone call as that of an individual he saw moments earlier

6

selling jewelry at a pawnshop next to the firearms store. Firebaugh also knew from the phone call that the suspect, Osse, was connected to the blue passenger vehicle parked in the back alley because the caller witnessed the suspect arrive in the vehicle. When Puckett arrived at the scene, she observed Osse outside the pawnshop. After Osse ran from Puckett and Firebaugh, Firebaugh visited the pawnshop and obtained Osse's receipt that contained false personal identifiers. Puckett later confirmed that the individual's name was Daniel Osse, not the 'Joe Sullivan' as stated on the pawnshop receipt and discovered that Osse was on active supervision. Thus, officers knew that Osse was selling jewelry under a fake name and social security number—a violation of Osse's supervision—before they conducted the search. It was reasonable for officers to believe that further evidence of a supervision violation, such as additional jewelry or pawnshop receipts, would be discovered in the vehicle and backpack. Additionally, officers conducted the search at the request of the probation officer after the probation officer learned of Osse's actions and his status as absconding from supervision. This evidence constitutes reasonable cause to search the vehicle and backpack.

Having determined law enforcement had reasonable cause to search Osse's backpack, the Court need not address the second issue of whether Osse abandoned the vehicle.

//

IV. CONCLUSION

IT IS HEREBY ORDERED that Defendant Daniel Isaac Osse's Motion to Suppress (Doc. 31) is DENIED.

The Clerk of Court is directed to notify counsel of the making of this Order.

DATED this 13th day of December, 2021.

SUSAN P. WATTERS
United States District Judge